Filed 11/27/13  P. v. Golonka CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMISON GOLONKA,<br><br>    Defendant and Appellant. | A135691<br><br>(Contra Costa County<br>Super. Ct. No. 51111699) |

Jamison Golonka was charged with two counts of committing a lewd or lascivious act with a child (Pen. Code[1], § 288, subd. (a)) and one count of possession of child pornography (§ 311.11, subd. (a)).  The case went to trial and a jury found Golonka guilty on the child pornography count; not guilty on one child molestation count; and guilty of the lesser included offense of simple battery on the other child molestation count.

Before trial, the court denied Golonka's motion to sever the child molestation counts from the child pornography count.  Golonka asserts that the trial court abused its discretion when it denied his motion because the evidence was not cross-admissible and the court impermissibly allowed a weaker case to be joined with a stronger one.  He claims that the alleged abuse of discretion resulted in gross unfairness that deprived him of a fair trial, requiring us to reverse his conviction for simple battery.

---

[1]  Statutory references are to the Penal Code, unless otherwise indicated.

We find no abuse of discretion in the trial court's denial of Golonka's severance motion, nor do we find that the joinder of the counts resulted in gross unfairness to Golonka. Accordingly, we affirm the judgment.

## BACKGROUND

### I. *Procedural Background*

On August 1, 2011, the People filed an information alleging two counts of committing a lewd or lascivious act with a child under the age of 14 (§ 288, subd. (a)) (counts one and two) and one count of possession of child pornography (§ 311.11, subd. (a)) (count three). Counts one and two included the allegation that Golonka was ineligible for probation because he had had substantial sexual conduct with a child under the age of 14 (§ 1203.066, subd. (a)(8)).

On January 12, 2012, Golonka moved to sever counts one and two from count three. The court considered and denied the motion the next day, determining that evidence on the charges was cross-admissible and that gross unfairness to Golonka would not result.

Following selection of a jury, presentation of evidence began on January 23, 2012. The case was submitted to the jury on January 30, 2012, and the jury returned a verdict the next day. On count one, the jury found Golonka guilty of the lesser included offense of simple battery (§§ 242, 243, subd. (a)). The jury found Golonka not guilty on count two and guilty on count three. The jury also found the parole ineligibility allegations attached to counts one and two to be not true.

At a sentencing hearing on April 20, 2012, the court placed Golonka on probation for five years, conditioned on serving 400 days in county jail and registration as a sex offender.

Golonka filed a timely notice of appeal on June 7, 2012.

### II. *Factual Background*

### A. *Prosecution Case*

On May 4, 2010, David Mathers, a detective with the Martinez Police Department, was monitoring internet file sharing activity and found a user who was sharing five files

2

with the keyword PTHC, which is an acronym for "pre-teen hard core." Mathers downloaded three of the files; identified the user's internet address (IP address); and determined the unique serial number of the user's installation of the file sharing program Shareaza. The three files Mathers downloaded were photographs of different naked females, approximately 9 to 11 years old, showing the subjects' breasts and genital areas. Mathers issued a warrant to Comcast for the user's street address. Comcast identified Golonka as the user of the IP address and supplied Golonka's street address in Antioch, California.

On May 27, 2010, Mathers served a search warrant at Golonka's home. Golonka answered the door. Also in the home were Golonka's four-year-old daughter, Jane Doe (Jane); his infant son; and his wife, Leila Martucci. The police seized a laptop computer, a digital camera, and compact disks from the residence.

Mathers examined the laptop and discovered the Shareaza serial number he had previously recorded. Evidence from a law enforcement database allowed Mathers to infer that some user of Golonka's computer had deleted and re-installed Shareaza on "almost a month-to-month basis" for the past six months. Mathers did not find copies of the photographs he had downloaded on May 4, 2010; however, he did find a deleted photograph of two naked children kneeling in front of a naked adult male, whose penis was at or near the lips of one of the children. This photograph was admitted into evidence and published to the jury.

One of the compact disks seized by the police contained 18 photographs and 2 videos that Mathers considered to be child pornography. Nine of the photographs and one of the videos were shown to the jury.

In October 2010, Mathers took Jane to the Child Interview Center (CIC) where she was interviewed twice. Jane told the interviewers that Golonka had touched her "pee-pee" with his hand. The touching incident occurred in the living room and Golonka told Jane not to tell her mother. Video recordings of the interviews with Jane were played to the jury.

Dr. James Carpenter, a pediatrician, testified as an expert in the field of child sexual abuse. Carpenter evaluated Jane at CIC on November 8, 2010. Jane told him that Golonka touched her "pee-pee" with his hand in a way she did not like. The touching occurred under her clothes. Carpenter observed no overt signs of trauma during the physical examination.

Jane, six years old at the time of trial, also testified. On one occasion in the living room, Golonka touched her "pee-pee." When asked what Golonka said, she said she was wiggling and ticklish and he told her to stop.

## B. *Defense Case*

Golonka testified on his own behalf. He began looking at internet pornography in 2004 or 2005. He looked at internet pornography sporadically at first, but by 2008 or 2009 it had become part of his daily routine.

Golonka installed Shareaza to download music and video games. Searching for files related to Subaru automobiles, Golonka found and downloaded a pornographic image of an adult woman that contained the term PTHC, though he did not know what the term meant. Golonka searched for additional files using the term PTHC and found photographs depicting minors, although he had been expecting adult pornography. He downloaded several such pictures, but he began deleting them when he saw what they depicted. Nevertheless, he later searched for files containing the term PTHC again, out of curiosity. Golonka deleted and re-installed Shareaza multiple times because "[i]t was taking up too much space and it was slowing down the computer."

When Golonka produced his compact disks, he did not realize they included photographs and videos of child pornography because he thought he had deleted those files. Golonka was not sexually aroused by images of minors.

Golonka denied ever touching Jane for sexual arousal or stimulation. In May 2010, Jane came to the couch where Golonka was sleeping. Jane asked Golonka to rub her back and Golonka did so. Jane, who enjoyed mimicking the cats, arched her back, pulling the blanket off Golonka. To get her to lie flat, Golonka put his hand on Jane's buttocks and pushed her down. Golonka realized that his hand was on her buttocks and

between her legs and he pulled his hand away.  Golonka was not sure that he touched Jane's vagina, but his hand was in the area for only a few seconds.

On another occasion, Golonka was attempting to unbuckle Jane's seat belt in the car.  Jane said "ow" and Golonka realized he may have pinched her in the leg or "the crotch area."  He told Jane not to tell anyone because "they would get the wrong idea."

## DISCUSSION

Golonka contends that the trial court erred by denying his motion to sever counts one and two from count three, resulting in a violation of his due process right to a fair trial.  As a result, he argues, we must reverse his conviction on the lesser included charge of simple battery.

### I. *Legal Standard*

Section 954 provides:  "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated.  The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately.  An acquittal of one or more counts shall not be deemed an acquittal of any other count."

In his motion to sever counts one and two from count three, Golonka conceded that the offenses could be joined under section 954 and he does not argue differently here.  Accordingly, the question before us is whether the court abused its discretion by refusing to sever the counts.  "A trial court has discretion to order that properly joined charges be tried separately (§ 954), but there must be a 'clear showing of prejudice to establish that

5

the trial court abused its discretion in denying the defendant's severance motion.' [Citation.] In assessing a claimed abuse of discretion, we assess the trial court's ruling by considering the record then before the court." (*People v. Myles* (2012) 53 Cal.4th 1181, 1200.)

" ' "The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." [Citation.] [¶] "The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial." [Citation.] Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case.' " (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315; accord, *People v. Vines* (2011) 51 Cal.4th 830, 855.)

"If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." (*People v. Soper* (2009) 45 Cal.4th 759, 774-775.)

If the trial court did not abuse its discretion in denying a severance motion, relief is available to a defendant only if the joinder " 'resulted in gross unfairness depriving the defendant of due process of law.' " (*People v. Soper*, *supra*, 45 Cal.4th at p. 783.)

## II. *Cross-Admissibility*

Golonka contends that in his case the evidence was not cross-admissible. He argues that "there would be no purpose" in having Jane testify in a separate pornography trial and that the pornographic images would not all have been admissible at a separate molestation trial.

6

To determine that evidence is cross-admissible, it is sufficient that "most if not all of the evidence" would be cross-admissible. (*People v. Mayfield* (1997) 14 Cal.4th 668, 721.)

Evidence Code section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Count three was for a violation of section 311.11, which is a "sexual offense" within the meaning of Evidence Code section 1108, subdivision (a). (Evid. Code, § 1108, subd. (d)(1)(A).) Thus, evidence that Golonka had molested Jane would be admissible in a separate pornography trial as evidence of Golonka's propensity to commit sexual offenses involving minors.

Similarly, evidence that Golonka possessed child pornography would have been admissible in a separate trial on the molestation charges to show his propensity to molest children. Such evidence would also have been admissible under Evidence Code section 1101, subdivision (b), to show Golonka's sexual intent when he touched Doe. (See *People v. Page* (2008) 44 Cal.4th 1, 40 ["evidence of sexual images possessed by a defendant has been held admissible to prove his or her intent"].)

Golonka argues that in a separate trial on the molestation charges, the court would have found that the majority of the images admitted to prove Golonka's possession of pornography would have been excluded under Evidence Code Section 1108 because they would have been more prejudicial than probative, and thus barred by Evidence Code section 352. We disagree. While the court may have excluded some images in a separate molestation trial under Evidence Code section 352, the bulk of the possession evidence would have been very relevant to the question of Golonka's sexual intent.

We conclude that in Golonka's case, the evidence was cross-admissible, dispelling any likelihood of prejudice, and "[f]or that reason alone, no abuse of discretion would have occurred in denying severance." (*People v. Maury* (2003) 30 Cal.4th 342, 393.)

**III.** *Joinder of a Weak Case with a Strong Case*

Golonka argues that the People's case on the molestation charges was "unquestionably weak," while the evidence that Golonka possessed pornography was "indisputable." By denying his motion for severance, Golonka contends that the trial court impermissibly allowed the People to try a stronger case with a weaker one.

We remind Golonka that "[i]n assessing a claimed abuse of discretion, we assess the trial court's ruling by considering the record then before the court." (*People v. Myles*, *supra*, 53 Cal.4th at p. 1200.) When the court ruled on the severance motion, it could reasonably have concluded that the evidence on the molestation charges was strong. The recordings of Jane's CIC interviews had been presented to the court and the court commented: "Frankly, I found her to be very [*sic*] extremely mature for a child who was approximately three weeks shy and later two weeks shy of her fifth birthday. [I found] her to be, frankly, very credible. I did not see any motive from the interview contents for her to fabricate. I found her to be very consistent both in presenting evidence that would show guilt on behalf of her father . . . ."

Considering the strength of the evidence of which it was aware, the court did not impermissibly allow the joinder of a weak case with a stronger one.

**IV.** *Prejudice*

Having found no abuse of discretion in the trial court's denial of Golonka's severance motion, no relief is available to Golonka absent a showing that joinder actually resulted in gross unfairness that amounted to a denial of due process. The outcome of the trial in Golonka's case makes such a showing impossible.

Golonka argues that "while the jurors may have been disturbed by hearing [Jane's] testimony and interview answers regarding the one instance of touching, they no doubt had a strong emotional response of revulsion when seeing the visual images that could well have clouded their ability to engage in a logical fact-finding process."

The jury was instructed on the elements of each of the crimes and was additionally instructed that each count charged a distinct offense that must be separately decided. "These instructions mitigated the risk of any prejudicial spillover . . . ." (*People v. Soper*,

8

*supra*, 45 Cal.4th at p. 784.)  It appears that the jury was able to follow these instructions and evaluate each case dispassionately, because although it found Golonka guilty on the child pornography count, it acquitted him on one child molestation count and found him guilty of only the lesser included offense of simple battery on the other.  (See *Soper* at p. 784 ["[t]he circumstance that the jury found defendant guilty of only second degree murder as to Olson, while finding him guilty of the first degree murder of Rigby, 'suggests that the jury was capable of differentiating between defendant's various murders; no improper spillover effect is evident here' "].)

Golonka has failed to demonstrate that joinder of the child pornography charge with the child molestation charges resulted in gross unfairness.

**DISPOSITION**

The judgment of the trial court is affirmed.

_____
Brick, J.*

We concur:


_____
Kline, P.J.


_____
Richman, J.


* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.